IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05cr204-T |
| | ) | WO |
| BILLY R. MERCER, JR. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on defendant's motion to suppress evidence and statements secured by officers as a result of defendant's arrest on October 10, 2004. For the reasons set out below, the motion is due to be denied.

### **Facts**

At some time prior to October 10, 2004, Roy Harmon, an agent with the Alabama Bureau of Investigation (ABI), left word at several motels in the Prattville, Alabama area, to contact him if someone named Billy Ray Mercer checked in. Harmon believed that Mercer was involved in the drug trade with his nephew, for whom Harmon had a federal warrant, and he knew that both men frequented area motels.

On October 10, 2004, a night clerk at the Hampton Inn in Prattville, Alabama, where Harmon left one of his cards, called the ABI to report that Mercer had checked into the motel. When the clerk could not reach the ABI, she was transferred to the state trooper's office, which in turn sent her to the Millbrook police thinking that Millbrook had jurisdiction. The Millbrook police department had an active alias failure to appear warrant for the defendant. Although they did not know why the ABI was looking for Mercer, the Millbrook

police department contacted the Prattville police department and asked them to arrest Mercer on the Millbrook warrant.

Two units from the Prattville police department arrived at the Hampton Inn at about 11 pm. Mercer was staying in one of the second floor rooms. Officers knocked on his door, which Mercer answered after three or four minutes. They asked Mercer to step out onto the deck and put his hands on the rail. The officers told defendant that the Millbrook police department had a warrant for his arrest, and they were going to detain him until the Millbrook police arrived. When asked if anybody else was in the room, defendant said that his sister-in-law Anita was there. Because Anita Mercer was not a registered guest, the motel staff said that she could not stay, so she packed up her things and left. Billy Ray Mercer was arrested and transported to the jail when the Millbrook police arrived.

Officer Headley of the Prattville police department told motel staff that "more than likely [defendant] wasn't going to be back to the hotel," because defendant had a cash only pay-out, he owed $1370 to Millbrook, and he was not going to be able to pay out that evening.[1] The arrest occurred late on a Sunday night, and Headley, who had previously worked at the Millbrook police department, believed that Mercer would not be able to pay his fine until after 8:00 a.m. on Monday morning, "if not later." Before the Prattville police left, the motel manager arrived and asked the police to walk through Mercer's room with her. The manager told the police that she just wanted to make sure there were no personal

---

[1] Defendant also could have paid a $500 bond for his release. He told the officers that he would have no problem obtaining money for the fine.

belongings lying out in the room. During the walk-through, Officer Headley observed a plastic baggy lying on the dresser, and a powdery substance on the floor, but he decided that this evidence was not sufficient to pursue further. No seizures were made as a result of this walk-through.

After the arrest, Steve Reed, a private guard employed to provide security at the Hampton Inn by Southeastern Protective Service, learned that a white female (that is, Mercer's sister-in-law, Anita) had attempted to get back into the Mercer's room by asking the desk clerk to let her in to get something that she had left in the room. The clerk denied her access as she was not registered to be in that room. Thereafter, Anita Mercer lingered in the motel parking lot until Reed told her to leave because she was not going to be able to get into the room.

After the arrest and Reed's contact with Anita Mercer, Reed and Brandy Barrett, a lobby hostess, decided to check the room in which defendant was arrested. Reed testified that: "Normally, we go check out rooms any time any type of controversial thing like that happens, we always go check out a room."[2] Reed had a bad cold at the time. While Barrett looked around the room, Reed went directly to the tissue dispenser and pulled some tissue out. Two bags of a "crystal substance," which Reed believed to be some type of contraband, fell out. Reed and Barrett left the room, took the bags to the lobby, and called the police

---

[2] According to Officer Headley, Barrett told him that she was concerned that Anita, who had "continually came back over and over again to the motel," would "break back into the room," so they also went into the room to find out if she had done so. At the hearing, Reed denied that he entered the room for this reason.

back to the scene.

At about 4 a.m., officers from the Prattville police department arrived at the motel. Reed and Barrett gave the bags to the officers, who concluded that the substance inside was crystal methamphetamine. The police called the motel manager. The manager told them that she wanted the room to be thoroughly checked because she was afraid that there might be more methamphetamine, guns, or dangerous chemicals in the room.

The Prattville police proceeded to search the room. They did not obtain a search warrant because the manager consented to the search, the defendant was in custody and the motel staff were "over that area," two bags of methamphetamine had already been found, and the officers were concerned that there might be volatile chemicals related to methamphetamine manufacture in the room. Officers found a Davis .380 silver pistol between the mattresses, along with some plastic bags.

Later that morning, around 7:30 or 8:00 a.m., motel staff allowed a Prattville narcotics officer and two ABI officers into the room in which the drugs were found to photograph the location. The officers conducted no further search. The officers then set up surveillance on Anita Mercer's car, which remained on the hotel property, in order to question her when she returned to pick up the vehicle about the drugs and the weapon found in the motel room. When Anita Mercer arrived, the officers made contact with her and observed the passenger in the car trying to hide something in the console. After officers removed the women from the vehicle, Mercer consented to a search of the car and officers found a quantity of methamphetamine. Mercer made several statements incriminating her

brother-in-law. Defendant has not moved to suppress this evidence.

On October 12, 2004, ABI agent Herman interviewed Billy Ray Mercer in jail. Herman advised Mercer of his rights, and Mercer acknowledged that he understood them. In response to questioning, Mercer made several incriminating statements concerning the gun and the drugs found in his motel room. Herman did not make any threats or promises to obtain the statements. However, Herman acknowledged that Mercer might have been providing him information in an attempt to persuade him to make an effort to get Mercer out of jail.

## Discussion

Warrantless search of motel room

Defendant contends that the officers could search his motel room without a warrant only if exigent circumstances existed, and he denies that any such circumstances were present in this case.

"The Supreme Court long has recognized that the Fourth Amendment's guarantee of freedom from warrantless searches and seizures is not premised on arcane concepts of property and possessory interests; instead, the Fourth Amendment protects an individual in those places where she can demonstrate a reasonable expectation of privacy against government intrusion." United States v. Cooper, 203 F.3d 1279, 1283-1284 (11th Cir. 2000) (citation omitted). "Such a place can include a hotel room." Id. at 1241 (citing Stoner v. California, 376 U.S. 483, 490 (1964)). Thus, the police officers' searches of defendant's motel room are subject to the Fourth Amendment's general prohibition against warrantless

searches, as well as the limited exceptions to the warrant requirement recognized by the Supreme Court.

In this case, motel staff entered defendant's room once without the police, and police entered the room on three other occasions (once after defendant was arrested, a second time after methamphetamine was found in the room by the hostess and security guard, and a third time to take photographs just prior to Anita Mercer's arrest). The court will address the two entries during which contraband was found, as these were the only two searches that yielded evidence which could be subject to suppression.

With regard to the first entry, the security guard's discovery of methamphetamine in the tissue box in Mercer's motel room was not constitutionally prohibited. "A search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government." United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003). "For a private person to be considered an agent of the government, we look to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." Id. In this case there is no evidence that the government had any knowledge of the search prior to the time that it occurred, or that officers openly encouraged or cooperated in the search. It is true that Reed, the security guard, testified that he has a close relationship with law enforcement agencies. However, he also testified that his primary function is to assist the motel with loss prevention, and that he would report "suspicious activity" to police if it could be harmful to guests or put the motel in a bad light.

In this case, Reed was clearly acting on behalf of the motel, not the police, when he entered defendant's motel room with the lobby hostess. See United States v. Jeffers, 342 U.S. 48, 51 (1951) ("The law does not prohibit every entry, without a warrant, into a hotel room. Circumstances might make exceptions and certainly implied or express permission is given to such persons as maids, janitors or repairmen in the performance of their duties."). This conclusion is underscored by the fact that, as Reed testified, he did not even intend to search the room. "Didn't search nothing," he said. "At that point after I pulled the tissue out, basically I was just pulling tissues out to blow my nose." The police were not obliged, under these circumstances, to refuse the evidence that Reed discovered inadvertently and subsequently turned over to them. See Coolidge v. New Hampshire, 403 U.S. 443, 488-89 (1971)("it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals," and, when a private party produces contraband for inspection, "it [is] not incumbent on the police to stop her or avert their eyes."). Thus, the methamphetamine found by motel staff in Mercer's room is not due to be suppressed.

The search during which the Prattville police discovered the weapon was also constitutional. This is so on at least two grounds. First, although a motel clerk does not generally have the authority to consent to a search of an occupied room, see Stoner v. State of California, 376 U.S. at 488, there is no Fourth Amendment violation if an officer has an objectively reasonable, though mistaken, good-faith belief that he has obtained valid consent to search the area. See Illinois v. Rodriguez, 497 U.S. 177, 185 (1990). In this case, control

of the motel room ordinarily would not have reverted to the motel until 12:00 noon, the regular check-out time for the Hampton Inn.  See, e.g., U.S. v. Wai-Keung, 845 F.Supp. 1548, 1562 (S.D. Fla. 1994).  However, Officer Headley testified that he did not know the checkout time at the motel.  Further, as noted above, while he knew that defendant intended to try to make bond, Headley thought, based on his previous experience at the Millbrook police department and the nature of the warrant, that defendant "wasn't going to be able to pay out that evening" and "more than likely he wasn't going to be back to the hotel."[3]  The court concludes that Headley had a good faith belief at the time of the search that, because defendant was in custody and unlikely to return, control of the room had reverted to the motel management, which therefore had the authority to give consent to search.  Even if Headley was mistaken in this belief (although in this case he was correct at least in part, as the defendant did not, in fact, return), his belief was objectively reasonable under the circumstances.[4]  See Rodriguez, 497 U.S. at 185 ("Whether the basis for [authority to consent to search] exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably.").

---

[3] Headley heard defendant tell his sister-in-law to "go ahead and sell everything in my truck," which Headley understood to be for the purpose of coming up with some money to make bond.

[4] In addition, Headley's mistake, had he been wrong in predicting that defendant would not be able to return to the room, would have been a mistake of fact and not of law.  See United States. v. Brazel, 102 F.3d 1120, 1149 (11th Cir. 1997).

8

In addition, the warrantless entry in this case was justified by exigent circumstances. "The exigent circumstances exception recognizes a 'warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant.'" United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002) (citation omitted). "The exception encompasses several common situations where resort to a magistrate for a search warrant is not feasible or advisable, including: danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." Id. "In validating a warrantless search based on the existence of an emergency, as with any other situation falling within the exigent circumstances exception, the Government must demonstrate both exigency and probable cause." Id. At 1337. "In the typical case, probable cause exists where the circumstances would lead a reasonable person to believe a search will disclose evidence of a crime." Id.

In this case, the police had probable cause to believe that additional evidence of a crime might be found in defendant's motel room, given the security guard's previous discovery of drugs in the tissue dispenser. Further, officers were reasonably justified in their belief that volatile chemicals[5] potentially present in the motel room constituted a risk of harm to the public. Two concealed bags of methamphetamine had already been found in the room. Headley believed that he was faced with a situation in which "there is different types of

---

[5] Headley testified: "I'm afraid there may be volatile chemicals and such as that up underneath the bed mattress, if we done found this amount of crystal meth, I don't know what's in the room. I mean [there might be] something else there that we might need to be worried about that could explode or whatever else."

9

chemicals that could explode. There is different types of chemicals they use that I know they use to make the methamphetamine that could have been easily hid up underneath the box area of the mattresses, because those mattresses are like a box that's a hollow box and then there is a box spring on top of it and there is a mattress up above it."

A concern for public safety due to the chemicals used in methamphetamine manufacture is reasonable. See United States v. Creech, 976 F.Supp. 1317, 1321 (D. Montana 1997); see also United States v. Lloyd, 396 F.3d 948, 954 (8th Cir. 2005) (The dangers created by methamphetamine labs can justify an immediate search because of exigent circumstances due to the volatile nature of such labs.); United States v. Francis, 327 F.3d 729, 736 (8th Cir. 2003) ("The potential hazards of methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by police officers who had probable cause to believe they had uncovered an ongoing methamphetamine manufacturing operation."). In this case, police did not detect a chemical odor coming from the room or observe any items related to methamphetamine manufacture in the room during their previous walk-through. However, Headley did believe that "a lot of times people will make methamphetamine in hotel rooms and it's very volatile to the surroundings and the people that are in the hotels or whatever else." The officers were aware that hotel staff had already been in defendant's room on two occasions since the arrest, and they could reasonably assume that other guests were sleeping nearby, and that more employees and guests would enter the room as it was readied for occupancy. These constituted exigent circumstances justifying immediate search of the motel room.

Accordingly, evidence relating to the gun found in defendant's motel room is not due to be suppressed.[6]

Statements to law enforcement

Defendant contends that the statements he made to law enforcement were taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966). He denies that he was advised of his rights prior to or during his interview with Herman, and he contends that he was "only making statements with a promise or understanding from law enforcement that anything told to law enforcement officers would be used to help defendant in his case and to help in getting him released from the Montgomery County jail." Motion at 3.

"Before the government may introduce a suspect's uncounselled statement made during custodial interrogation, it must show that the suspect made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel. ... This showing has two distinct dimensions: (1) relinquishment of the right must have been the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) waiver must have been made with the awareness of both the right being abandoned and the consequences of the decision to abandon that right. Courts will look at the totality of the circumstances to determine whether the government has met its burden." United States v.

---

[6] The court does not reach the question of whether the inevitable discovery doctrine would apply to this case. See United States . v. Sherry, 906 F.Supp. 1311, 1321 (D. Nebraska 1995) ("had a search warrant been sought based on these facts, it would have been granted, and the evidence in question discovered. The doctrine is therefore applicable and the evidence should not be excluded.").

<u>Beale</u>, 921 F.2d 1412, 1434-35 (11th Cir. 1991) (citation omitted). In this case, agent Herman testified that he advised defendant of his rights before interviewing him at the jail, and defendant acknowledged that he understood his rights. Herman did not use any force or threats of violence or promise Mercer anything in order to get him to make a statement. The fact that defendant may have hoped that, if he made a statement, Herman would help him get out of jail does not render defendant's statements involuntary, since there is no evidence that any promises to that effect were actuallymade. Thus, defendant's statements are not subject to suppression in this case.

## Conclusion

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's Motion to Suppress (Doc. # 19) be DENIED.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before close of business January 4, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 22nd day of December, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE